IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

KIM ROBERTS, AS ADMINISTRATRIX OF THE
ESTATE OF CHARLES "CHUCK" S. TRAUB                                    PLAINTIFF

VS.                     CASE NO. 1:05CV00081 JMM

UNITED STATES OF AMERICA                                              DEFENDANT

### ORDER

Kim Roberts, as administratrix of the estate of Charles "Chuck" S. Traub, brings this action under the Federal Tort Claims Act for damages per the Arkansas wrongful death and survival statutes. The Court, sitting as the fact finder, heard testimony on January 25 and 26, 2007. Based on the evidence adduced at trial and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

I. *Findings of Fact*

1. In January 2004, Mr. Traub, a 66 year old Air Force veteran, underwent a colonoscopy. During the colonoscopy, a growth purported to be located 40 cm from the anus in the sigmoid colon, was located. The pathology examination determined the growth was a well differentiated adenocarcinoma.

2. Following appropriate pre-surgery tests, surgery was performed at Central Arkansas Veterans Health Care System, John L. McClellan Hospital, Little Rock, Arkansas on February 20, 2004. Chief of Surgery, Dr. Anne Mancino, and third year resident surgeon, Dr. Julio Arais,

conducted the surgery.

3. According to the colonoscopy report, the adenocarcinoma, which had been tattooed at the time of the colonoscopy, was approximately 40 cm from the anus in the sigmoid colon. However, when Drs. Mancino and Arais began the surgery they were unable to locate the cancer there. Therefore, Drs. Mancino and Arais performed a colonoscopy which not only located the cancer, but also located an additional polyp in the ascending colon. The tattooed adenocarcinoma was not found in the sigmoid, but rather in the splenic flexure.

4. The surgeons ordered a biopsy of the polyp discovered during surgery to determine if it was cancerous or pre-cancerous.

5. The surgeons performed a left hemicolectomy removing a large portion of the colon at and around the splenic flexure. The surgeons also removed the appendix and the additional polyp.

6. Dr. Mancino determined that the sigmoid colon was sufficiently diseased so as to require its removal. This judgment was based on her conclusion that a satisfactory anastomosis could not be accomplished to the sigmoid in the condition in which she found it.

7. While attempting to perform the anastomosis between the sigmoid colon and the transverse colon, Drs. Mancino and Dr. Arais tore a hole in Mr. Traub's sigmoid colon. The surgeons elected to remove all of Mr. Traub's remaining colon rather than repairing the hole. According to the testimony, the decision was made based on the presence of diverticulae and the concern that a safe anastomosis could not be made to the sigmoid colon.

8. When the surgeons attempted to connect the right colon to the rectum, they were unable to do so.

9. The remaining right colon was removed and the small intestine was attached to the rectum.

10. Mr Traub was taken from the operating room to surgical intensive care, and remained there from February 20th through the morning of February 22nd. During the afternoon of February 22nd, Mr. Traub developed tachycardia. The doctors were treating the tachycardia.

11. At approximately 7:00 p.m. on February 22nd, Mr. Traub was speaking with a nurse when he suffered a fatal cardiac arrhythmia.

12. Following Mr. Traub's death, his daughter became Administratrix of his Estate, filed a proper tort claim with the Veteran's Administration and then timely filed this action under the Federal Tort Claims Act, invoking Arkansas' wrongful death and survival statutes.

II. *Discussion*

There are no objections to the Court's jurisdiction in the case and the parties stipulated that plaintiff has exhausted her administrative remedies under the Federal Tort Claims Act. *See* 28 U.S.C. § 2675(a).

The liability of the United States is determined in accordance with the substantive law of the place where the alleged act or omission occurred. The controlling Arkansas law is the Arkansas Medical Malpractice Act codified at Arkansas Code Annotated § § 16-114-201 through 209 (1987).

Plaintiff's claims of liability against the defendant has it foundation in the following assertions:

The surgeons who performed the surgery on Mr. Traub violated the applicable standard of care in the performance of the surgery (1) by tearing a hole in the sigmoid colon in an attempt

to perform an anastomosis between the sigmoid colon and the transverse colon; (2) by failing to hand sew or appropriately use the stapler in the anastomosis between the transverse colon and the sigmoid colon which would have prevented the tearing of the colon; and (3) by electing to remove the sigmoid colon, and eventually the entire colon, instead of merely repairing the tear in the sigmoid colon.

Plaintiff also contends and has the burden of proving that any violation of the standard of care of the doctors was the proximate cause of Mr. Traub's death and the resulting damages. *See* Ark.Code Ann. 16-114-206(a); *Williamson v. Elrod*, 348 Ark. 307, 72 S.W.3d 489 (2002).

As for the plaintiff's first contention, the Court is unable to find by a preponderance of the evidence that tearing a hole in the sigmoid colon was a negligent act or omission which caused Mr. Traub's death.

Next, Plaintiff's case is premised on the contention that the surgeons erred in attempting to staple the sigmoid to the right ascending colon after the resection. Dr. John Lambert[1] was critical of several decisions made by the surgeons. He opined that the surgeons erred by selecting a stapler that was too large and by approaching the site to be stapled from the rectum rather than from above. This argument starts with the assumption that the sigmoid colon was in a condition that would permit a successful anastomosis. Plaintiff points to evidence that Mr. Traub had no symptoms of diverticulitis and that the pathology report supported this assumption.

The surgeons, on the other hand, were testifying based upon their observations during the attempt to pass the stapler through the sigmoid. They were emphatic that the problems

---

[1] Plaintiff's expert witness

encountered at that location were due to the presence of disease and a weakening of the sigmoid. Relying on what she observed, Dr. Mancino made a considered judgment that anastomosis at that location would not be in the patient's best interest and elected a different course. The Court cannot find this judgment to have been medical negligence. The Court is convinced that Dr. Mancino's decision was consistent with the findings of the pathologist that the sigmoid was ulcerated.

Further, Dr. Mancino testified that it was standard practice to use a sizer before selecting a particular stapler. Dr. Lambert concurred in this practice. Although Dr. Lambert was critical of the surgeons' decision to approach with the stapler from the rectum, the approach Dr. Lambert advocated would have required an additional incision. The surgeons had no way of anticipating difficulties passing the stapler through the sigmoid until the actual attempt was made. Absent that knowledge, the approach from the rectum would be the normal practice. This was not a violation of the standard of care.

Dr. Lambert was also critical of the surgeons for not visualizing the sigmoid colon before attempting the anastomosis. The surgeons accomplished virtually the same objective by mobilizing the sigmoid, examining it by palpitation, and passing the colonscope through that area. The Court finds that these procedures met the standard of care.

The plaintiff also contends that the surgeons were negligent for electing to use the stapler rather than hand sew the sigmoid. Dr. Lambert acknowledged that use of the stapler was the standard of care and his only criticisms were the use of the wrong size stapler and the wrong direction of approach. All of the doctors agreed that hand sewing takes longer than stapling. After reflection on these factors, the Court does not find that the decision to attempt the

anastomosis with the stapler was below the standard of care.

The surgeons concede that the stapler caused the tear in the sigmoid colon which had to be addressed by either repairing the tear or removing the section of colon that contained the tear. This brings the Court to the plaintiff's final contention that the tear should have been repaired. On this point, plaintiff contends that removal of the sigmoid was only necessitated by the tear caused by the stapler. This was refuted by the testimony of Dr. Mancino. Dr. Mancino testified that her decision to remove the colon was dictated by the underlying weakness of the remaining sigmoid and the attendant risk of a failed anastomosis to the sigmoid. This decision was not negligence in the opinion of the Court.

To support her claim that Mr. Traub's death was proximately caused by the length and complexity of the surgery, plaintiff primarily relied on the testimony of Dr. Jim Wilson. Dr. Wilson is a well trained and highly experienced cardiologist with an excellent reputation. Dr. Wilson reviewed the medical records and the depositions of the surgeons and opined that the extent of the surgery was the proximate cause of Mr. Traub's death.

The Court does not take issue with Dr. Wilson's opinion that a longer and more extensive surgery than anticipated could materially increase the risk of complications, including death. Plaintiff concedes that much of the delay during surgery was not the fault of the surgeons. What was expected to be a relatively simple and short surgery became lengthy and complicated because of the location of the cancer in the splenic flexure. The surgery lasted over five hours. At most the surgery was extended by two hours as a result of the alleged negligence of the doctors. There was no evidence that these additional hours were any more significant to the patient's condition than any other part of the surgery. Given Mr. Traub's history of heart disease

and his progress after the surgery, the Court cannot find that any delay attributable to the method of anastomosis was the proximate cause of his death.

For these reasons, judgment will be entered for the defendant. The Clerk is directed to dismiss the Complaint .

IT IS SO ORDERED THIS 13th day of February, 2007.

James M. Moody
United States District Court